# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

SEBASTIAN AGOSTINO, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

BROADSOFT, INC., JOHN D. MARKLEY JR., MICHAEL TESSLER, DAVID BERNARDI, JANE DIETZE, JOHN J. GAVIN JR., ANDREW M. GEISSE, PAUL MAGELLI, DOUGLAS L. MAINE, and EVA SAGE-GAVIN,

Defendants.

Civil Action No. 8:17-cv-3415

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

1. **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**

2. **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Sebastian Agostino ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.        This is a class action brought by Plaintiff on behalf of himself and the other ordinary shareholders of BroadSoft, Inc. ("BroadSoft" or the "Company"), except Defendants (defined below) and their affiliates, against BroadSoft and the members BroadSoft's board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between BroadSoft and Cisco Systems, Inc., through its subsidiary Brooklyn Acquisition Corp., (collectively "Cisco").

2.      On October 20, 2017, the Board caused the Company to enter into a definitive Agreement and Plan of Merger (the "Merger Agreement") with Cisco, pursuant to which, BroadSoft shareholders will be entitled to receive $55.00 for each share of common stock they own (the "Merger Consideration).

3.      On, November 13, 2017, the Board authorized the filing of a materially incomplete and misleading proxy statement on Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the Proxy, they have failed to disclose material information that is necessary for stockholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading.

5.      Specifically, the Proxy contains materially incomplete and misleading information concerning: (i) the continued employment of BroadSoft officers and directors in the surviving company; (ii) the terms and conditions of the confidentiality agreements; and (iii) the financial analyses performed by the Company's financial advisors, Qatalyst Partners LP ("Qatalyst") and Jefferies LLC ("Jefferies" and together with Qatalyst, the "Financial Advisors").

6.      The special meeting of BroadSoft shareholders to vote on the Proposed Merger is forthcoming.  It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.

7.      For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is

disclosed to BroadSoft shareholders, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) BroadSoft maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

11.     Plaintiff is, and has been at all relevant times, the owner of BroadSoft common stock and held such stock since prior to the wrongs complained of herein.

12.     Defendant BroadSoft is a Delaware Corporation with its principle executive offices located at 9737 Washingtonian Boulevard, Suite 350, Gaithersburg, Maryland 20878.  BroadSoft is a leading global provider of software and services that enable telecommunications service providers to deliver hosted, cloud-based Unified Communications, or UC, to their enterprise customers.  BroadSoft's common stock trades on the NYSE under the symbol "BSFT."

13.     Individual Defendant John D. Markley Jr. is a director of BroadSoft and is the Chairman of the Board.

14.     Individual Defendant Michael Tessler is a director of BroadSoft and is the President and Chief Executive Officer of the Company.

15.     Individual Defendant David Bernardi is, and has been at all relevant times, a director of the Company.

16.     Individual Defendant Jane Dietze is, and has been at all relevant times, a director of the Company.

17.     Individual Defendant John J. Gavin Jr. is, and has been at all relevant times, a director of the Company.

18.     Individual Defendant Andrew M. Geisse is, and has been at all relevant times, a director of the Company.

19.     Individual Defendant Paul Magelli is, and has been at all relevant times, a director of the Company.

20.     Individual Defendant Douglas L. Maine is, and has been at all relevant times, a director of the Company.

21.     Individual Defendant Eva Sage-Gavin is, and has been at all relevant times, a director of the Company

22.     The defendants identified in paragraphs 13-21 are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of BroadSoft common stock who are being and will be harmed by Defendants' actions described below (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

24.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of October 31, 2017, BroadSoft had approximately 31,647,785 shares outstanding.

(b)     The holders of these shares are believed to be geographically dispersed through the United States;

(c)     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members.  The common questions include, *inter alia*, the following:

> i.   Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;
>
> ii.  Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and
>
> iii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Merger as presently anticipated.

(d)     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(e)     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(f)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(g)     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

25.     BroadSoft, Inc., incorporated on November 17, 1998, is a global provider of software and services that enable telecommunications service providers to deliver hosted, cloud-based Unified Communications (UC) to their enterprise customers. The BroadSoft Business solution is a communications and collaboration offering that enables telecommunications service providers to offer businesses and other enterprises UC features and functionalities on a cloud-delivered basis without the need for traditional premise-based private branch exchange (PBX) equipment. The Company's technology is designed to meet service providers' requirements for service availability, network integration and scale, and to address the needs of various business segments, such as micro, small, medium, and large enterprises; market segments, such as hospitality, government, education, contact centers, and healthcare; and industries requiring call center functionality. The capabilities of the BroadSoft Business offering can be accessed through desk phones, smartphones, tablets, laptops, and personal computers (PCs).

26.     Cisco, incorporated on December 10, 1984, designs and sells a range of products, provides services, and delivers integrated solutions to develop and connect networks around the world. The Company operates through three geographic segments: Americas; Europe, the Middle East, and Africa (EMEA); and Asia Pacific, Japan, and China (APJC). The Company groups its

products and technologies into the various categories, such as Switching; Next-Generation

Network (NGN) Routing; Collaboration; Data Center; Wireless; Service Provider Video; Security,

and Other Products. In addition to its product offerings, the Company provides a range of service

offerings, including technical support services and advanced services. The Company delivers its

technology and services to its customers as solutions for their priorities, including cloud, video,

mobility, security, collaboration and analytics. The Company helps its customers build networks

and automate, orchestrate, integrate and digitize information technology (IT)-based products and

services. It serves customers, including businesses of all sizes, public institutions, governments

and service providers.

   27. On October 23, 2017, Cisco and BroadSoft issued a joint press release announcing

the Proposed Merger. The press release stated in relevant part:

> SAN JOSE, Calif. and GAITHERSBURG, MD – October 23, 2017 – Cisco (NASDAQ: CSCO) and BroadSoft (NASDAQ: BSFT) today announced a definitive agreement for Cisco to acquire publicly-held BroadSoft, Inc., headquartered in Gaithersburg, MD. Pursuant to the agreement, Cisco will pay $55 per share, in cash, in exchange for each share of BroadSoft, or an aggregate purchase price of approximately $1.9 billion net of cash, assuming fully diluted shares including conversion of debt. The acquisition has been approved by the board of directors of each company.
>
> "Together, Cisco and BroadSoft will deliver a robust suite of collaboration capabilities across every market segment," said Rowan Trollope, senior vice president and general manager of Cisco's Applications Business Group. "We believe that our combined offers, from Cisco's collaboration technology for enterprises to BroadSoft's suite for small and medium businesses delivered through Service Providers will give customers more choice and flexibility."
>
> "We are excited about this transaction, which represents the culmination of a robust process undertaken by BroadSoft's Board of Directors to maximize shareholder value," said Michael Tessler, president and CEO, BroadSoft. "As businesses continue to move toward the cloud in search of simplicity and speed, joining Cisco will allow us to deliver best-in-class collaboration tools and services. BroadSoft's hosted offerings, sold through the Service Providers and aimed at small and medium businesses, are highly complementary to Cisco's on-premises and enterprise-centric HCS

offerings. Together, we can inspire teams to create, collaborate and perform in ways never before imagined."

More and more businesses expect fully featured voice and contact center solutions with the ability to deploy them on premises or in the cloud. By combining BroadSoft's open interface and standards-based cloud voice and contact center solutions delivered via Service Provider partners, with Cisco's leading meetings, hardware and services portfolio, the combined company will offer best-of-breed solutions for businesses of all sizes and deliver a full suite of collaboration capabilities to power the future of work.

The acquisition of BroadSoft reinforces Cisco's commitment to Unified Communications and enhances its ability to address the millions of aging TDM lines poised to transition to IP technology and cloud native solutions over the coming years.

"Cisco recently marked a significant milestone with our 200th acquisition. Acquisitions continue to be a core part of our innovation strategy and over the past two years have helped Cisco accelerate or enter areas such as IoT, application intelligence, AI, hyperconvergence and SD-WAN," said Rob Salvagno, vice president of Cisco Corporate Development. "With the addition of BroadSoft, we expect to accelerate the pace of innovation across our entire collaboration portfolio."

The acquisition is expected to close during the first quarter of calendar year 2018, subject to customary closing conditions and regulatory review. Prior to the close, Cisco and BroadSoft will continue to operate as separate companies. Upon completion of the transaction, BroadSoft employees will join Cisco's Unified Communications Technology Group led by Vice President and General Manager Tom Puorro, under the Applications Group led by Trollope.

## II.        The Inadequate Merger Consideration

28.     The Merger Consideration undervalues BroadSoft given the Company's recent financial performance and strong growth prospects.

29.     In the year leading up to the announcement of the Proposed Merger, BroadSoft's stock increased approximately 70% going from $31.77 on October 20, 2016 to $53.90 on October 20, 2017, as illustrated by the chart below:



30.     On August 7, 2017, BroadSoft reported positive financial results for the 2017

Second Quarter. Total revenue increased by $7.0 million or 9%, to $88.8 million, compared to

$81.7 million for the quarter ended June 30, 2016. The Company stated on their Form 10-Q:

> We continue to increase our BroadSoft Business capabilities. We
> enable enterprises and people to be more flexible and dynamically
> communicate, interact and collaborate by helping them integrate
> their communication and collaborative tools. We are focused on our
> efforts to spur demand by our service providers to adopt BroadSoft
> Business as the centerpiece of their offering for unified
> communications, collaboration and customer support. BroadSoft
> Business includes UC-One, our UC offering; Team-One, our
> enterprise collaboration solution; and CC-One, our contact center
> offering. We believe that BroadSoft Business is the leading
> integrated offering of UC, collaboration and contact center
> capabilities. BroadSoft Business enables us to provide our service
> provider customers significant growth of their communication and
> collaboration capabilities and options, driven by demands by these
> customers for these capabilities increasingly delivered on mobile
> platforms. During 2017, we expect to continue our strategic
> investments in, and expansion of, our BroadSoft Business solutions.
>
> During the remainder of 2017, our BroadCloud SaaS offerings will
> continue to be a particularly important area of investment, marketing

focus and geographic expansion for us. Many of our service provider customers are interested in accessing the capabilities of our BroadWorks features and functions through a service offering hosted and managed by us. We believe that service providers choose our SaaS offerings to accelerate their time to market and reduce their capital and implementation costs and that delivering innovative solutions to our customers will drive our revenue growth.

We also believe that we have the potential of achieving increasing software revenue from what we describe as Network Transformation projects. We have assisted several of our largest service provider customers on projects to begin transforming most, if not all, of their legacy fixed and mobile circuit switched networks to IP-based networks, driven in part by the movement to migrate their wireless networks to VoLTE. Much of our work has been to provide our customers with UC capabilities in these network transformations. In 2016, we gained acceptance from these customers of our initial implementations of certain of these projects, which contributed to our financial results. While in 2017, we expect to continue to see positive revenue impact from these projects and we believe these existing transformation projects, as well as new opportunities with certain of our major service provider customers, we think that we should see increasing software revenue from these projects beginning in 2018. These projects could drive significant revenue for us over the next several years.

31.     Most recently, on November 6, 2017, the Company reported further positive financial results for the 2017 Third Quarter. Total revenue continued its steady rise to $91.5 million in the third quarter of 2017, a 9% increase compared to $84.1 million in the third quarter of 2016.

32.     Additionally, financial analysts agree that the Merger Consideration undervalues BroadSoft. Prior to the announcement of the Proposed Merger, analysts at William Blair expected any offer to be between $60 and $70 per share. Since the announcement of the Proposed Merger, and the Merger Consideration, many analysts have downgraded their outlook on the Company's stock, including Needham, who referred to the Merger Consideration as underwhelming.

33.     Finally, both of the Financial Advisors valued the Company at a significantly higher price than the Merger Consideration. Qatalyst calculated an implied equity value per share of up to $60.03, and Jefferies calculated an implied equity value per share of up to $66.53 – both a substantial premium to the Merger Consideration and within analysts' predictive range.

34.     In sum, the Merger Consideration appears to inadequately compensate BroadSoft shareholders for their shares.  Given the Company's strong financial results and growth potential, it appears that $55 is not fair compensation for BroadSoft shareholders. It is therefore imperative that the Company's shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote regarding the Proposed Merger.

III.         **The Proxy Is Materially Incomplete and Misleading**

35.     On November 13, 2017, BroadSoft filed the Proxy with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to cast an informed vote regarding Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

36.     With respect to the Financial Advisors' various discounted cash flow analyses, the Proxy fails to disclose the following key components used in their analyses: (i) the inputs and assumptions underlying the calculation of the discount rate ranges; (ii) the inputs and assumptions underlying the calculation of the a ranges of multiples of fully-diluted enterprise value to next-twelve-months estimated NOPAT; (iii) estimated cash balance, net of the face value of outstanding convertible debt, of BroadSoft; (iv) the assumptions and figures regarding BroadSoft's net operating losses; (v) the outstanding share number used to find the per share equity value; and (vi) the actual terminal values calculated and used in the analyses.

37.     These key inputs are material to BroadSoft shareholders, and their omission renders the summary of the Financial Advisors' Discounted Cash Flow Analyses in the Proxy incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review

11

articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.   This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

38.    With respect to Jefferies' Premia Paid Analysis, the Proxy fails to disclose the individual premiums used to prepare the comparative analysis. A fair summary of this analysis requires the disclosure of the individual premiums for each transaction observed. Merely providing a quartile range is insufficient, as stockholders are unable to assess whether the banker summarized fairly, or, instead, emphasize only the figures that best present the premia in light of the Merger Consideration, i.e. as low as possible. The omission of this information renders the summary of this analysis set forth on page 43 of the Proxy materially incomplete and misleading.

39.    Additionally, the Proxy indicates that Michael Tessler, Scott D. Hoffpauir, and James A. Tholen will continue on with Cisco after the Proposed Merger, but fails to disclose full details concerning such employment negotiations, including whether any negotiations occurred prior to October 15, 2017. Communications regarding continuing employment during the sales

process must be fully and clearly disclosed. This information is vital to BroadSoft's stockholders so that they may understand potential conflicts of interest facing management and the Board. The timing and course of these negotiations provides key insight concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders. The failure to include full details surrounding these discussions of continuing employment for BroadSoft's officers and directors renders the Proxy materially incomplete and misleading.

40.     Finally, the Proxy discloses the existence of confidentiality agreements entered into between BroadSoft and various parties, but fails to disclose whether those agreements contained don't ask, don't waive provisions. Don't ask, don't waive standstill provisions prevent potentially interested parties from approaching the board and requesting a waiver of their respective standstill provisions.  Without the disclosure of this information, the stockholders are operating under a false impression that any of the parties who signed the standstill could have made a superior proposal. If don't ask don't waive provisions are in effect, that's not true. Bidders can only make superior offer by breaching the standstill agreement. Thus, stockholders need to be informed of the details in the confidentiality agreements, so that they may judge the fairness of the offers.

41.     In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

45.     The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

46.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, amongst other things: (i) the continued employment of BroadSoft officers and directors in the surviving company; (ii) the terms and conditions of the confidentiality agreements; and (iii) the financial analyses performed by the Company's financial advisors.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48.     Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information

14

identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections for both companies and the details surrounding discussions with other interested parties and the Financial Advisors.  Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review the bankers' analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

49.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of both companies' financial projections.

50.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the shareholder vote on the Proposed Merger.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
### On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of BroadSoft within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of BroadSoft, and participation in and/or awareness of the BroadSoft's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of BroadSoft, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of BroadSoft, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Merger.  The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Merger.  The Individual Defendants were thus directly involved in the making of the Proxy.

55.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

16

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

58.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.  Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.  Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Merger, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.  Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.  Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.  Granting such other and further equitable relief as this Court may deem just and proper.

JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 16, 2017

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel:  212-971-1341
Fax:  212-202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

**LEVI & KORSINSKY LLP**

By:   */s/ Donald J. Enright*
Donald J. Enright (Bar No. 13551)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
T: (202) 524-4290
F: (202) 333-2121
Email: denright@zlk.com

*Attorneys for Plaintiff*