**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SEBASTIAN AGOSTINO, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 8:17-cv-3415 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BROADSOFT, INC., JOHN D. MARKLEY JR., MICHAEL TESSLER, DAVID BERNARDI, JANE DIETZE, JOHN J. GAVIN JR., ANDREW M. GEISSE, PAUL MAGELLI, DOUGLAS L. MAINE, and EVA SAGE-GAVIN, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...................................2

III.    PLAINTIFF'S COUNSEL ARE ENTITLED TO THE FEE AND EXPENSE
        AWARD UNDER THE COMMON BENEFIT DOCTRINE............................................5

        A.      THE SUPPLEMENTAL DISCLOSURES BENEFITED BROADSOFT
                STOCKHOLDERS ................................................................................9

                1.      Management's Financial Projections...........................................9

                2.      Crucial Metrics Clarifying Both Qatalyst's and Jefferies' Discounted
                        Cash Flow Analyses.................................................................10

                3.      Jefferies' Premia Paid Analysis ................................................12

        B.      PLAINTIFF'S MOOTED DISCLOSURE CLAIMS WERE MERITORIOUS
                WHEN FILED ..................................................................................12

        C.      PLAINTIFF'S COUNSEL'S FEE AND EXPENSE AWARD SHOULD BE
                APPROVED IN FULL UNDER A LODESTAR/*JOHNSON* FACTORS
                ANALYSIS.......................................................................................14

                1.      The Time and Labor Required...................................................15

                2.      The Customary Fees in Similar Cases .......................................16

                3.      The Results Obtained, the Skill Requisite to Perform the Legal
                        Service Properly, the Novelty and Difficulty of the Question
                        Presented by the Case, the Preclusion of Other Employment, and
                        Time Limitations Imposed by the Circumstances ......................18

                4.      The Experience, Reputation and Ability of the Attorneys.........19

                5.      A Reasonable Multiplier is Appropriate Because Plaintiff's Counsel
                        Undertook Representation on a Contingent Basis .....................20

IV.     PLAINTIFF'S COUNSEL ARE ALSO ENTITLED TO AN AWARD OF FEES
        AND EXPENSES UNDER DELAWARE LAW..............................................................22

        A.      THE SUPPLEMENTAL DISCLOSURES BENEFITTED THE CLASS ............25

        B.      THE AMOUNT OF TIME AND EFFORT EXPENDED BY COUNSEL...........26

        C.      THE REMAINING FACTORS SUPPORT THE REQUESTED FEE AND
                EXPENSE AWARD..............................................................................27

V.    CONCLUSION..................................................................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Alaska Elec. Pension, Fund v. Brown*,
   988 A.2d 412 (Del. 2010) ................................................................................. 8

*Allen v. United States*,
   606 F.2d 432 (4th Cir. 1979) ............................................................................ 15

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores*,
   54 F.3d 69 (2d Cir. 1995) ........................................................................ 6, 14, 18

*In re Ancestry*,
   No. 8173-VCG, 2015 Del. Ch. LEXIS 21 (Del. Ch. Jan. 30, 2015) ..................... 10

*In re AXA Fin., Inc. S'holders Litig.*,
   No. 18268, 2002 Del. Ch. LEXIS 57 (Del. Ch. May 16, 2002) ..................... 26, 27

*Azar v. Blount Int'l, Inc.*,
   No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493 (D. Or. Mar. 20, 2017) ........... 9

*Barton v. Drummond Co.*,
   636 F.2d 978 (5th Cir. 1981) ...................................................... 5-6, 7-8

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................................... 22

*Blau v. Rayette-Faberge, Inc.*,
   389 F.2d 469 (2d Cir. 1968) .............................................................................. 7

*Boyd v. Coventry Health Care, Inc.*,
   299 F.R.D. 451 (D. Md. 2014) ......................................................................... 22

*Brown v. Brewer*,
   No. CV 06-3731-GHK (SHx),
   2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010) ............................... 9, 13

*Brown v. Transurban USA, Inc.*,
   318 F.R.D. 560 (E.D. Va. 2016) ...................................................................... 16

*Chrapliwy v. Uniroyal, Inc.*,
   670 F.2d 760 (7th Cir. 1982) ........................................................................... 16

*Clark v. Experian Info. Sols., Inc.*,
   No. 8:00-1219-22, 2004 U.S. Dist. LEXIS 32063 (D.S.C. Apr. 20, 2004) ........... 14

*Clark v. Kick*,
  79 F. Supp. 2d 747 (S.D. Tex. 2000) ................................................................. 23

*Cluett, Peabody & Co. v. CPC Acq. Co.*,
  863 F.2d 251 (2d Cir. 1988) ............................................................................. 23

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ........................................................... 19, 22

*Cooperstock v. Pennwalt Corp.*,
  820 F. Supp. 921 (E.D. Pa. Apr. 21, 1993) ...................................................... 8, 13

*Cort v. Ash*,
  422 U.S. 66 (1975) ........................................................................................... 23

*In re Del Monte Foods Co. S'holders Litig.*,
  No. 6027-VCL, 2011 Del. Ch. LEXIS 94 (Del. Ch. June 27, 2011) ......................... 23, 24, 25

*Denton v. Pennymac Loan Servs., L.L.C.*,
  No. 4:16cv32, 2017 U.S. Dist. LEXIS 74037 (E.D. Va. May 12, 2017) ................... 19

*Dias v. Purches*,
  No. 7199-VCG, 2012 Del. Ch. LEXIS 227 (Del. Ch. Oct. 1, 2012) .......................... 27, 28

*Fountain v. Avondale Indus.*,
  No. 95-1198 SECTION "I" (2), 1996 U.S. Dist. LEXIS 5045 (E.D. La. Apr. 16, 1996) ...... 14

*Franklin Balance Sheet Inv. Fund v. Crowley*,
  No. 888-VCP, 2007 Del. Ch. LEXIS 133 (Del. Ch. Aug. 30, 2007) ..................................... 26

*Glassman v. Wometco Cable TV, Inc.*,
  No. 7307, 1989 Del. Ch. LEXIS 1 (Del. Ch. Jan. 6, 1989) ................................................. 12

*In re Golden State Bancorp Inc. S'holders Litig.*,
  No. 16175, 2000 Del. Ch. LEXIS 8 (Del. Ch. Jan. 7, 2000) ............................................ 25, 28

*Helwig v. Vencor, Inc.*,
  251 F.3d 540 (6th Cir. 2001) ............................................................................. 13

*Hysong v. Encore Energy Partners LP*,
  No. 11-781, 2011 U.S. Dist. LEXIS 130688 (D. Del. Nov. 10, 2011) ................................... 1

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964) ..................................................................................... 4, 18

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ............................................... 14

*Kahan v. Rosenstiel*,
    424 F.2d 161 (3d Cir. 1970) ........................................... 7, 13

*Kalyawongsa v. Moffett*,
    105 F.3d 283 (6th Cir. 1997) ............................................. 23

*Kay Co. v. Eq. Prod. Co.*,
    749 F. Supp. 2d 455 (S.D.W. Va. 2010) ............................. 22

*Kinney v. Int'l Bhd. of Elec. Workers*,
    939 F.2d 690 (9th Cir. 1991) ............................................. 15

*Kopet v. Esquire Realty Co.*,
    523 F.2d 1005 (2d Cir. 1975) ............................................... 6

*Koppel v. Wien*,
    743 F.2d 129 (2d Cir. 1984) ............................................. 6, 7

*Krell v. Prudential Ins. Co. of Am.*,
    148 F.3d 283 (3d Cir. 1998) ............................................... 14

*Lane v. Page*,
    862 F. Supp. 2d 1182 (D.N.M. May 22, 2012) ...................... 6

*Lewis v. Anderson*,
    692 F.2d 1267 (9th Cir. 1982) ........................................... 13

*Lewis v. Gen. Emp't Enters., Inc.*,
    No. 91 C 0291, 1992 U.S. Dist. LEXIS 5464 (N.D. Ill. Apr. 10, 1992) ................................. 8

*LNB Bancorp, Inc. v. Osborne*,
    No. 1: 09 CV 643, 2011 U.S. Dist. LEXIS 137705 (N.D. Ohio Nov. 30, 2011) .................... 1

*McCafferty v. Local 254, SEIU*,
    186 F.3d 52 (1st Cir. 1999) ............................................... 15

*McKittrick v. Gardner*,
    378 F.2d 872 (4th Cir. 1967) ............................................. 21

*In re Microstrategy, Inc.*,
    172 F. Supp. 2d 778 (E.D. Va. 2001) ............................ 15-16, 21-22

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ................................................................................. 2, 5

*Moore v. Verizon Commc'ns, Inc.*,
   No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 15609 (N.D. Cal. Feb. 5, 2013) .................... 16

*In re Nellson Nutraceutical, Inc.*,
   356 B.R. 364 (Bankr. D. Del. Dec. 4, 2006) ........................................................ 11

*In re Netsmart Techs., Inc. S'holders Litig.*,
   924 A.2d 171 (Del. Ch. Mar. 14, 2007) ........................................................... 9, 24

*O'Malley v. Jeffries* (*In re Abercrombie & Fitch Co.*),
   886 A.2d 1271 (Del. 2005) ......................................................................... 26

*In re Outsidewall Tire Litig.*,
   52 F. Supp. 3d 777 (E.D. Va. 2014) ................................................................ 23

*Pellegrin v. Nat'l Union Fire Ins.* (*In re Abrams & Abrams, P.A.*),
   605 F.3d 238 (4th Cir. 2010) ............................................................... 14, 15, 21

*Phillips v. Triad Guar., Inc.*,
   No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950 (M.D.N.C. May 9, 2016) ............................ 16

*In re Plains Res., Inc. S'holders Litig.*,
   No. 071-N, 2005 Del. Ch. LEXIS 12 (Del. Ch. Feb. 4, 2005) ....................................... 25, 27

*Prudential-Bache Secur., Inc. v. Matthews*,
   627 F. Supp. 622 (S.D. Tex. 1986) ................................................................. 8

*In re Pure Res. S'Holders Litig.*,
   808 A.2d 421 (Del. Ch. 2002) ...................................................................... 24

*Rosenbaum v. MacAllister*,
   64 F.3d 1439 (10th Cir. 1995) ...................................................................... 5

*Savoie v. Merchs. Bank*,
   84 F.3d 52 (2d Cir. 1996) ......................................................................... 13

*In re Schering-Plough/Merck Merger Litig.*,
   No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) ....... 6, 20, 22

*SEC v. Mayhew*,
   121 F.3d 44 (2d Cir. 1997) ....................................................................... 9-10

*SEC v. Nat'l Student Mktg. Corp.*,
  457 F. Supp. 682 (D.D.C. 1978) ........................................................................ 9

*Shamrock Holdings, Inc. v. Polaroid Corp.*,
  709 F. Supp. 1311 (D. Del. 1989) ...................................................................... 1

*Singleton v. Domino's Pizza, L.L.C.*,
  976 F. Supp. 2d 665 (D. Md. 2013) .................................................................. 22

*Skelton v. Gen. Motors Corp.*,
  860 F.2d 250 (7th Cir. 1988) ....................................................................... 7, 21

*Smith v. GTE Corp.*,
  236 F.3d 1292 (11th Cir. 2001) ......................................................................... 6

*Smith v. Robbins & Myers*,
  969 F. Supp. 2d 850 (S.D. Ohio 2013) ........................................................ 11, 13

*Spencer v. Comserv Corp.*,
  No. Civil Nos. 4-84-794, 4-84-882, 4-85-283,
  1986 U.S. Dist. LEXIS 15863 (D. Minn. Dec. 30, 1986) .................................. 16

*Sullivan v. Chase Inv. Servs., Inc.*,
  434 F. Supp. 171 (N.D. Cal. 1977) .................................................................. 23

*Superior Partners v. Chang*,
  471 F. Supp. 2d 750 (S.D. Tex. Jan. 8, 2007) ................................................... 1

*In re Talley Indus., S'holders Litig.*,
  No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 9, 1998) ............................ 24

*Trans World Corp. v. Odyssey Partners*,
  561 F. Supp. 1315 (S.D.N.Y. Apr. 20, 1983) ..................................................... 1

*Turner v. Bernstein*,
  776 A.2d 530 (Del. Ch. 2000) ........................................................................... 1

*Unite Nat'l Ret. Fund v. Watts*,
  No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 27, 2005) ................ 16

*United Handicapped Fed'n v. Andre*,
  622 F.2d 342 (8th Cir. 1980) ............................................................................ 8

*United States v. Imperial Irrigation Dist.*,
  595 F.2d 525 (9th Cir. 1979) ............................................................................ 6

*United Vanguard Fund, Inc. v. Takecare, Inc.*,
   727 A.2d 844 (Del. Ch. 1998) ............................................................................... 8

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................. 19

*In re Xoom Corp. Stockholder Litig.*,
   No. 11263-VCG, 2016 Del. Ch. LEXIS 117 (Del. Ch. Aug. 4, 2016) ................... 25

*Yablonski v. United Mine Workers*,
   466 F.2d 424 (D.C. Cir. 1972) ............................................................................... 7

**Statutes & Regulations**

Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)……………….*passim*

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) ……………………2-3

SEC Rule 14a-9, 17 C.F.R. § 240.14a-9 .................................................................... 3

**Other Authorities**

Steven M. Davidoff, *Fairness Opinions*,
   55 Am. U. L. Rev. 1557 (2006) ....................................................................... 11-12

## I.    INTRODUCTION

Plaintiff Sebastian Agostino ("Plaintiff"), through undersigned counsel, respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for an Award of Attorney's Fees and Expenses. As a result of Plaintiff's litigation efforts, Defendants disseminated certain material information regarding the proposed merger between BroadSoft, Inc. ("BroadSoft" or the "Company") and Cisco Systems, Inc. (the "Merger") that had been omitted from the initial iterations of the preliminary and definitive proxy statement[1] (the "Supplemental Disclosures")[2].    The Supplemental Disclosures enabled BroadSoft stockholders to properly assess the financial fairness of the Merger and the valuation analyses performed by BroadSoft's financial advisors.  Plaintiff therefore conferred a substantial benefit upon all BroadSoft stockholders, entitling Plaintiff's Counsel[3]

---

[1]    Courts have encouraged stockholders to commence litigation of this nature based upon preliminary proxy statements. *E.g., Superior Partners v. Chang*, 471 F. Supp. 2d 750, 754-755 (S.D. Tex. Jan. 8, 2007) ("Merely because a copy of the preliminary proxy statement is not physically mailed to shareholders does not exclude it from being a 'communication.' To distinguish between preliminary and definitive proxies on this basis would ignore post-internet reality."); *Hysong v. Encore Energy Partners LP*, No. 11-781, 2011 U.S. Dist. LEXIS 130688, at *10 n.3 -*11 (D. Del. Nov. 10, 2011) (noting that "a communication to shareholders 'may constitute a proxy solicitation, even if it does not contain an express request for a proxy, if it is part of a continuous plan intended to end in solicitation and to prepare the way for success.'") (quoting *Shamrock Holdings, Inc. v. Polaroid Corp.,* 709 F. Supp 1311, 1327 (D. Del. 1989)); *Trans World Corp. v. Odyssey Partners*, 561 F. Supp. 1315, 1319 (S.D.N.Y. Apr. 20, 1983) (same); *Turner v. Bernstein,* 776 A.2d 530, 549 (Del. Ch. 2000) ("Undoubtedly, this court prefers that stockholder plaintiffs bring disclosure claims promptly, particularly in situations where the plaintiffs have access to preliminary proxy materials from the Securities and Exchange Commission in advance of the company's final materials."); *see also LNB Bancorp, Inc. v. Osborne*, No. 1: 09 CV 643, 2011 U.S. Dist. LEXIS 137705, at *29 (N.D. Ohio Nov. 30, 2011) (denying summary judgment on Section 14(a) claim premised upon "false statements in preliminary proxy…").

[2]    The Supplemental Disclosures were disseminated to BroadSoft stockholders via a Form DEFA14A filed with the U.S. Securities and Exchange Commission ("SEC") on January 11, 2018.

[3]    Plaintiff's Counsel consists of Monteverde & Associates PC as lead counsel and Levi & Korsinsky as local counsel.

to an award of fees and expenses.  *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970)[4].

While Plaintiff has attempted to negotiate a reasonable attorney's fee and expense award with Defendants, Defendants have refused to substantively engage in a fee discussion. Accordingly, Plaintiff now files the instant motion and requests a comparatively modest award of attorney's fees and expenses of $250,000 (the "Fee and Expense Award").

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On October 23, 2017, BroadSoft and Cisco jointly announced that they had entered into a merger agreement pursuant to which BroadSoft would survive the Merger as a wholly owned subsidiary of Cisco.  Pursuant to the terms of the merger agreement, BroadSoft stockholders were offered $55.00 in cash for each share of BroadSoft common stock that they owned (the "Merger Consideration").

On November 13, 2017, in order to convince BroadSoft stockholders to vote in favor of the Merger, the BroadSoft board of directors (the "Board" and together with BroadSoft, the "Defendants") authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  *See generally* Complaint (Dkt. No. 1). Specifically, the Proxy contained materially incomplete and misleading information concerning: (i) BroadSoft's financial projections; and (ii) the financial analyses performed by the Company's financial advisors, Qatalyst Partners LP ("Qatalyst") and Jefferies LLC ("Jefferies" and together with Qatalyst, the "Financial Advisors").  Complaint ¶¶ 5, 35-41.

---

[4]    All internal citations and alterations have been omitted, and all emphasis added, unless otherwise noted.

Accordingly, on November 16, 2017, Plaintiff, a stockholder of BroadSoft, filed a putative class action on behalf of himself and all other similarly situated stockholders against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, in connection with their dissemination of the materially incomplete and misleading Proxy.[5] Dkt. No. 1.

Shortly thereafter, on November 21, 2017, Plaintiff and Defendants conferred regarding the disclosure violations raised in the Complaint and potential supplemental disclosures necessary to remedy the Proxy disclosure deficiencies.

On November 30, 2017, Plaintiff conferred with Defendants on the status of supplemental disclosures. Since Defendants refused to commit to issuing the supplemental disclosures Plaintiff demanded at that time, Plaintiff's Counsel commenced drafting a motion for a preliminary injunction to be filed if Defendants continued to refuse to provide the Supplemental Disclosures prior to the BroadSoft stockholder vote regarding the Merger.

On December 13, 2017, BroadSoft filed a Definitive Schedule 14A Proxy Statement (the "Definitive Proxy") with the SEC, which, among other things, announced that the special stockholder meeting to vote on the Merger would occur on January 25, 2018 (the "Stockholder Vote").

On January 2, 2018, Defendants provided Plaintiff with the proposed Supplemental Disclosures to be made before the Stockholder Vote.

---

[5] After Agostino filed the present action, a copycat action was filed against Defendants alleging substantially the same claims as Agostino, styled *Franchi v. Broadsoft, Inc. et al*, Docket No. 8:17-cv-03488-TDC (filed Nov 22, 2017). The present motion and requested Fee and Expense Award is submitted only in this Action. Agostino reserves the right to seek discovery regarding standing and/or causation from Franchi should Franchi seek to intervene or demand a portion of the Fee and Expense Award.

3

On January 8, 2018, Plaintiff accepted the Supplemental Disclosures as adequate consideration to moot the Complaint and the need to file his motion for preliminary injunction.

On January 11, 2018, Defendants filed the Supplemental Disclosures with the SEC, which disclosed additional material information regarding BroadSoft management's internal financial projections, the Financial Advisors' Discounted Cash Flow Analyses, and Jefferies' Premia Paid Analysis.  *See* Ex. 1 to the Declaration of Donald J. Enright (the "Enright Dec.").  In other words, Plaintiff's complaint and litigation efforts "provide[d] a necessary supplement to Commission action[,]" which was the very reason the Supreme Court held stockholders have a private right of action under Section 14(a).  *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964) (noting that the SEC examines thousands of "proxy statements annually and each of them must necessarily be expedited. Time does not permit an independent examination of the facts set out in the proxy material.").

On January 11, 2018, Plaintiff requested to meet and confer with Defendants regarding Plaintiff's demand for a Fee and Expense Award.  Plaintiff subsequently conferred or reached out to Defendants on January 13, 16, 18, 22, and 29 to try to resolve the Fee and Expense Award without motion practice. Defendants have not agreed to a Fee and Expense Award, or even made a counter offer.

On January 25, 2018, BroadSoft held its special meeting where stockholders, armed with the material information provided in the Supplemental Disclosures, voted to approve the Merger.

Plaintiff's Counsel now moves for a Fee and Expense Award in connection with the dissemination of the Supplemental Disclosures, which enabled BroadSoft stockholders to meaningfully assess the fairness of the Merger Consideration and exercise their corporate suffrage rights on a more informed basis.

**III.     Plaintiff's Counsel Are Entitled to the Fee and Expense Award Under the Common Benefit Doctrine**

Plaintiff's Counsel are entitled to an award of reasonable attorney's fees and expenses when their efforts confer a "substantial" or "common" benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.  *Mills*, 396 U.S. at 396.

In *Mills*, the Supreme Court held that vindicating Section 14(a)'s statutory policy of "informed corporate suffrage" confers a substantial benefit upon stockholders sufficient to warrant awarding attorney's fees. 396 U.S. at 396. As the Supreme Court explained:

> In many suits under § 14 (a)…it may be impossible to assign monetary value to the benefit. Nevertheless, the stress placed by Congress on the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders…Private stockholders' actions of this sort involve corporate therapeutics, and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute.

*Id*.

Further, the Supreme Court in *Mills* explained that requiring a corporation to pay plaintiff's attorney's fees is the proper way to spread the costs proportionately among the benefitting stockholders, as doing so "is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." 396 U.S. at 396-397; *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1444 (10th Cir. 1995) (noting that "[a]ny fees assessed against the corporation can be spread proportionately among all of the shareholders, who are the real beneficiaries of the litigation, because the corporation is the alter ego of the shareholders."); *Barton v. Drummond Co.*, 636 F.2d 978, 985 (5th Cir. 1981) ("[U]nder the 'common benefit' theory, the logical mechanism for spreading the cost of this

litigation among those benefited is the corporation…Those cases which define 'benefit' under the 'common benefit' exception make clear that the recovery of fees from the corporation is an appropriate means of spreading the cost of obtaining the benefit among all the shareholders."); *Lane v. Page*, 862 F. Supp. 2d 1182, 1255 (D.N.M. May 22, 2012) ("[C]ourts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money recovery has been obtained in corporation's favor.").[6]

Since *Mills*, it has become "well established that non-monetary benefits, such as promoting fair and informed corporate suffrage…may support a fee award." *Koppel v. Wien*, 743 F.2d 129, 134 (2d Cir. 1984). "[T]he promotion of corporate suffrage regarding a significant policy issue confers a substantial benefit regardless of the percentage of votes cast for or against the proposal at issue." *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores*, 54 F.3d 69, 72 (2d Cir. 1995); *see also Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975) (finding fee award warranted where litigation caused company to disclose financial statements).[7]

---

[6] *See also Smith v. GTE Corp.*, 236 F.3d 1292, 1307 (11th Cir. 2001) (recognizing common benefit doctrine is accomplished by assessing costs against a defendant corporation in shareholder actions because "those costs are, in effect, incurred by the shareholder/beneficiaries.");*United States v. Imperial Irrigation Dist.*, 595 F.2d 525, 531 (9th Cir. 1979) (explaining that shareholders are "beneficiaries [who] had pre-existing relationships with the corporation…and had contributed funds to the treasury from which the fee award was to come.").

[7] *See also In re Schering-Plough/Merck Proposed Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *49 (D.N.J. Mar. 25, 2010) (awarding $3.5 million attorney's fee in disclosure-based settlement where "the supplemental disclosures facilitated communication and informed shareholders of previously undisclosed material information permitting shareholders to exercise their voting rights accordingly…a substantial benefit was conferred as a consequence of the efforts of Class Counsel to obtain for shareholders more complete, informative and material supplemental disclosures for the purpose of exercising their vote in accordance with the Proposed Merger, ultimately approved by 99.1% of voting shares.").

Further, "an award of plaintiffs' attorney's fees is not precluded because no judgment or consent decree was entered and the complaint was dismissed as moot. Fees may be awarded even when there is no judgment on the merits or when the dispute has become moot because the relief sought is otherwise obtained." *Koppel*, 743 F.2d at 135. Indeed, courts have awarded attorney's fees where the need for further litigation became moot because of concessions made by defendants in response to pre-litigation demand letters, *Blau v. Rayette-Faberge, Inc.*, 389 F.2d 469, 474 (2d Cir. 1968), the filing of a complaint, *Kahan v. Rosenstiel*, 424 F.2d 161, 164, 175 (3rd Cir. 1970), and the filing of a preliminary injunction motion. *Yablonski v. United Mine Workers*, 466 F.2d 424, 431 (D.C. Cir. 1972). "Indeed, in *Mills* attorney's fees were awarded to the plaintiffs although it was not yet determined what relief if any plaintiffs could obtain." *Kahan*, 424 F.2d at 167. As the D.C. Circuit explained in *Yablonski*:

> The Supreme Court in *Mills* [] noted that the relevant inquiry is not into the technical posture of the litigation, but whether it has conferred a substantial benefit on the members of an ascertainable class…As all lawyers know, a lawsuit does not always have to go to final adjudication on the merits in order to be effective. Assuming the effectiveness in terms of practical results, the litigating stage attained is relevant only to the amount of the fees to be allowed, and not to the issue of whether they should be awarded at all.[8]

466 F.2d at 431.

Defendants "bear the burden of production and persuasion on the issue of causation. Where, as here, plaintiffs' lawsuit is mooted by defendants' corrective action, the burden properly shifts to defendants to establish the absence of a causal connection in order to defeat a claim for legal fees." *Koppel*, 743 F.2d at 135; *Barton*, 636 F.2d at 985 (holding where shareholder's

---

[8]     As set forth below, the early resolution of this action is reflected by counsel's lodestar. *See Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) (noting that the early resolution of litigation "is reflected in the lodestar—plaintiffs' counsel worked fewer hours than they would have if the case had gone to trial.").

derivative suit has been rendered moot by subsequent action of the defendant, the latter has the burden of showing that there was no causal connection between the two in order to defeat the shareholder's claim for legal fees and expenses); *Prudential-Bache Secur., Inc. v. Matthews*, 627 F. Supp. 622, 626 (S.D. Tex. 1986) (same).

Additionally, the common benefit does not need to flow *solely* from this litigation for Plaintiff's Counsel to be entitled to recover an award of attorney's fees and expenses. "For a causal connection to be established, the lawsuit need not have been the only possible cause or even the primary cause of the corporation's actions." *Lewis v. General Employment Enterprises, Inc.*, No. 91 C 0291, 1992 U.S. Dist. LEXIS 5464, at *11 (N.D. Ill. Apr. 10, 1992) (citing *United Handicapped Federation v. Andre*, 622 F.2d 342, 346-47 (8th Cir. 1980)). "Rather, the lawsuit need only have been a contributing cause of the corporate benefit. In short, to meet their burden, defendants essentially are required to persuade this Court that the lawsuit was not a factor in their decision-making and subsequent conduct."[9] *Lewis*, 1992 U.S. Dist. LEXIS 5464 at *11; *Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 923 (E.D. Pa. Apr. 21, 1993) ("If plaintiff can demonstrate these two elements - merit and substantial benefit - the burden then shifts to the defendant to prove that the lawsuit did not in any way cause their action which ultimately rendered the suit moot.").[10]

---

[9]     Plaintiff reserves his right to conduct relevant discovery regarding causation in the event Defendants challenge it.

[10]    *See also Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 417 (Del. 2010) ("Where, as here, a defendant takes action subsequent to the complaint that renders the claims asserted moot, Delaware law imposes on the defendant the burden to show that no causal connection existed between the initiation of the suit and any later benefit to the shareholders…to overcome this presumption, the Defendants must demonstrate that the lawsuit did not in any way cause their action."); *United Vanguard Fund, Inc. v. Takecare, Inc.*, 727 A.2d 844, 852 (Del. Ch. 1998) ("[T]he defendants bear the burden of demonstrating that there was *no* causal connection between the initiation of the lawsuit and *any* subsequent benefit to the shareholders. This is a heavy burden and it is to be expected that a defendant will not often be able to satisfy it.").

A.      **The Supplemental Disclosures Benefited BroadSoft Stockholders**

As noted above, the Supplemental Disclosures are comprised of three categories of information: (i) management's financial projections; (ii) crucial metrics clarifying Qatalyst's and Jefferies' discounted cash flow analyses; and (iii) Jefferies' Premia Paid Analysis. The disclosure of this information benefitted the Company's stockholders.

1.      **Management's Financial Projections**

The Supplemental Disclosures contain internal financial projections, including net operating profit after tax ("NOPAT") and BroadSoft's estimated cash balance of $397 million as of September 20, 2017 and $415 million as of December 31, 2017. Enright Dec., Ex. 1 at 3-4. Courts have consistently recognized that internal management projections and forecasts are of special importance to stockholders, because they contain unique insights into the value of the company that cannot be obtained elsewhere. *See In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. Mar. 14, 2007) (noting that management projections are important because management has "meaningful insight into their firms' futures that the market [does] not"); *Azar v. Blount Int'l, Inc.*, No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493, at *16 (D. Or. Mar. 20, 2017) ("The established case law shows the importance (and, hence, materiality) of financial projections to shareholders' decision-making."); *Brown v. Brewer*, 2010 U.S. Dist. LEXIS 60863, at *69-72 (C.D. Cal. June 17, 2010) (denying summary judgment based on the materiality of management's internal financial projections). Indeed, "in a merger transaction such as that presented here, accurate financial information is necessary in order for a shareholder fairly to be able to vote…." *SEC v. National Student Marketing Corp.*, 457 F. Supp. 682, 707 (D.D.C. 1978); *see also SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997) (material facts "include any fact which in

reasonable and objective contemplation might affect the value of the corporation's stock or securities.").

2.      **Crucial Metrics Clarifying Both Qatalyst's and Jefferies' Discounted Cash Flow Analyses**

The Supplemental Disclosures provided material figures that were necessary for BroadSoft stockholders to fully understand the Financial Advisors' Discounted Cash Flow Analyses. Specifically, the Supplemental Disclosures allowed stockholders to determine the fairness of the terminal value, and to understand the adjustments made to the implied net present value. The Proxy stated that the terminal value range was calculated by multiplying the 2022 NOPAT by 15.0x to 22.0x. Thus, by including the 2022 NOPAT figure, the Supplemental Disclosures allowed stockholders to judge for themselves the fairness of the terminal values. Additionally, the Proxy indicated that the Financial Advisors adjusted the total implied equity values by adding the estimated cash and cash equivalents and subtracting the total estimated debt. By disclosing these values—$397 million for Qatalyst's estimated cash, $415 million for Jefferies' estimated cash, and $270 million of estimated debt by both Financial Advisors—the Supplemental Disclosures allowed stockholders to see precisely how the implied equity values were adjusted, which is necessary to properly assess the reasonableness of the bankers' valuations. *See In re Ancestry*, No. 8173-VCG, 2015 Del. Ch. LEXIS 21, at *37, *64-65 (Del. Ch. Jan. 30, 2015) (critically analyzing NOPAT and terminal value assumptions in assessing reliability of financial advisors' valuations in connection with merger).

Further, the Proxy stated that the Financial Advisors divided the implied equity values by the amount of BroadSoft's fully diluted shares of common stock calculated using the treasury stock method, without explaining further. The number of shares used to divide the implied equity value can have a tremendous dilutive effect on the final per share value ranges. The Supplemental

Disclosures state that Jefferies used 41 million shares of BroadSoft common stock taking into account RSUs, PSUs, stock options outstanding, and treating in-the-money convertible debt on a net share basis, and the 18% dilution factor used by Qatalyst.  Enright Dec., Ex. 1 at 4.  Armed with this information, stockholders were able to determine how much credence to give the Financial Advisors' Discounted Cash Flow Analyses in evaluating the Merger Consideration and deciding how to vote.

The inputs and assumptions underlying the values utilized in a discounted cash flow analysis ("DCF") are material to stockholders, so that they may judge for themselves if such calculations were appropriate.  *See Smith v. Robbins & Myers*, 969 F. Supp. 2d 850, 874 (S.D. Ohio 2013) (finding omissions of DCF inputs material and denying motion to dismiss Section 14(a) claim). The calculation of a terminal value under a DCF analysis "has a material impact on [the] ultimate conclusion as to the [] enterprise value." *In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 374 (Bankr. D. Del. Dec. 4, 2006).

As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars…. This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations

> underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id*. at 1577-78.

### 3.    Jefferies' Premia Paid Analysis

The Supplemental Disclosures also provided meaningful clarification to Jefferies' Premia Paid Analysis. The Proxy merely provided the quartile range for the One-Day and the 20-day Premia, which was insufficient for stockholders to properly assess the analysis. These ranges are subject to skewing by groups of extremely large or small values. The Supplemental Disclosures provides the median for both the One-Day Premium and the 20-Day Premium, which grounds the 25th and 75th Percentiles and gives BroadSoft stockholders a better idea of the typical premium associated with these deals. Enright Dec., Ex. 1 at 4. By including the median statistic, the Supplemental Disclosures empowered stockholders to compare the Merger Consideration to the typical premium associated with cash-out mergers.

A premiums analysis provides the premiums received by similar companies in similar transactions, and is a fundamental valuation analysis used in assessing the fairness of a merger. *Fairness Opinions*, 55 Am. U.L. Rev. at 1574. Therefore, providing a comprehensive explanation of this information is material to stockholders. *See Glassman v. Wometco Cable TV, Inc.*, No. 7307, 1989 Del. Ch. LEXIS 1, at * (Del. Ch. Jan. 6, 1989) ("it would seem reasonable to expect that a shareholder might consider this [premiums] information material.").

### B.    Plaintiff's Mooted Disclosure Claims Were Meritorious When Filed

"Aside from the requirement of establishing a substantial benefit, [some] courts have imposed only the additional requirement that a plaintiff must demonstrate that his complaint was

'meritorious.'" *Lewis v. Anderson*, 692 F.2d 1267, 1270-1271 (9th Cir. 1982) (citing *Kahan*, 424 F.2d at 167); *but see Savoie v. Merchants Bank*, 84 F.3d 52, 57 (2d Cir. 1996) ("In addition to a causal connection, some Circuits have required a showing that the complaint has sufficient merit to survive a motion to dismiss, before they will award fees when a case has been mooted. This Court has not imposed that additional requirement, and we decline to do so now.").  Although Plaintiff is unaware of any Fourth Circuit opinion addressing the "meritorious" requirement, it is undoubtedly satisfied here should the Court wish to consider it.

"[I]n establishing a meritorious claim, petitioners need only show that their claims had some reasonable hope for success based on the pleadings." *Cooperstock*, 820 F. Supp. at 924; *Lewis*, 692 F.2d at 1271 (meritorious requirement "is met if the plaintiff's complaint has sufficient merit to survive a motion to dismiss on the pleadings."). Here, as noted above, courts have denied motions to dismiss and motions for summary judgment in actions premised upon the omission of financial projections or other metrics underlying a financial advisor's fairness opinion. *Supra* § IV.A.1. As the *Brown* and *Smith* Courts held, under Section 14(a), "if a Proxy discloses valuation information, it must be complete and accurate." *Smith*, 969 F. Supp. 2d at 874 (citing *Brown*, 2010 U.S. Dist. LEXIS 60863 at 69-70); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 560-61 (6th Cir. 2001) ("With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known--but it may not choose half-truths.").

Simply put, there is no doubt that Plaintiff "had some reasonable hope for success" on his claims, *Cooperstock*, 820 F. Supp. at 924, and there is a strong likelihood Plaintiff would have prevailed on the merits of those claims had Defendants failed to moot them.

C.   **Plaintiff's Counsel's Fee and Expense Award Should Be Approved in Full Under a Lodestar/*Johnson* Factors Analysis**

Where, as here, there is no "common fund" out of which attorneys' fees can be awarded, the lodestar method is the appropriate method to measure a requested fee award.  *See e.g., Clark v. Experian Info. Solutions, Inc*., No. 8:00-1217-22, 2004 U.S. Dist. LEXIS 32063, at *41-45 (D.S.C. Apr. 22, 2004); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) (lodestar method appropriate "where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method."); *Wal-Mart Stores, Inc.*, 54 F.3d 69 at 73 (affirming order awarding fees for enhanced disclosure based on lodestar and multiplier).

The Fee and Expense Award in this case is reasonable under the factors adopted by the Fourth Circuit Court of Appeals.  *See In re Abrams & Abrams*, 605 F.3d 238, 244 (4th Cir. 2010) (directing district courts to follow the twelve factors set forth in *Johnson v. Georgia highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Fountain v. Avondale Indus.*, No. 95-1198, 1996 U.S. Dist. LEXIS 5045, at *4 (E.D. La. Apr. 16, 1996) (applying *Johnson* factors in awarding fees under § 14(a)); *Wal-Mart Stores*, 54 F.3d at 73 (affirming order awarding fees in § 14(a) action based on lodestar). The *Johnson* factors are: (i) the time and labor required; (ii) the novelty and difficulty of the question presented by the case; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the attorneys due to acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) any time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client, and; (xii) awards in

similar cases. *In re Abrams & Abrams,* 605 F.3d at 244 (citing *Allen*, 606 F.2d at 436 n. 1).[11] Here,

application of the relevant *Johnson* factors demonstrates that Plaintiff's requested Fee and Expense

Award should be granted in full.

### 1.     The Time and Labor Required

Plaintiff's Counsel expended a total of 114.4 hours of attorney and paralegal time in

prosecuting this action, including pre-suit investigation, drafting the complaint, reviewing and

analyzing relevant SEC filings, negotiating with defense counsel, drafting a brief for preliminary

injunction, and preparing the instant motion.  *See* Declaration of Juan E. Monteverde (attached as

Exhibit 11 to the Enright Decl.). The work performed was necessary to protect the rights of

BroadSoft stockholders, and resulted in the Supplemental Disclosures.  Further, "[f]ees are allowed

for fee litigation in a common benefits case because to do so furthers the purposes served by the

allowance of fees on the merits." *Kinney v. International Brotherhood of Electrical Workers*, 939

F.2d 690, 694 (9th Cir. 1991); *McCafferty v. Local 254, SEIU*, 186 F.3d 52, 62 (1st Cir. 1999)

("The principle is well established that the fee application is a necessary part of the award of

attorney's fees. If the original award is warranted . . . a reasonable amount should be granted for

time spent in applying for the award.").

In calculating the lodestar amount, Plaintiff's Counsel have applied their regular hourly

rates, which are reasonable for litigation of this nature and are in line with rates approved by courts

within the Fourth Circuit in securities class actions. *In re Microstrategy, Inc. Sec. Litig.*, 172 F.

Supp. 2d 778, 788 & n.33 (E.D. Va. 2001) (suggesting plaintiff's class action attorneys' rates were

reasonable where "*the market for class action attorneys is nationwide and populated by very*

---

[11]     Although some factors may not apply in every case, those that do should be examined. *In re Abrams & Abrams*, 605 F.3d at 244.

*experienced attorneys with excellent credentials*," and rates were "not inconsistent with the rates charged by lawyers in large, prominent, and, as here, expert law firms that typically represent defendants in securities class actions."); *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *23-24 (M.D.N.C. May 9, 2016) (same, referring to partners' hourly rates of $640 to $880 per hour and associates rates of $375 to $550 per hour); *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 575-76 (E.D. Va. 2016) (holding "[a]n attorney's actual billing rate provides a starting point for purposes of establishing a prevailing market rate" and collecting cases within the Fourth Circuit with approved rates ranging from up to $310 for paralegals, $700 for associates, and $975 for partners); *see also Spencer v. Comserv Corp.*, No. 4-84-794, 1986 U.S. Dist. LEXIS 15863, at *32-33 (D. Minn. Dec. 30, 1986) ("Compensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate.").[12]

## 2. The Customary Fees in Similar Cases

As illustrated by the table below listing recent comparable federal mooted proxy disclosure cases and their associated attorney's fees[13], the requested Fee and Expense Award is reasonable and within the range for similar cases.

---

[12]     Plaintiff's Counsel's hourly rates are undoubtedly in line with or less than the rates charged by Defendants' counsel, which is a relevant consideration. *See Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n.18 (7th Cir. 1982) ("The rates charged by the defendant's attorneys provide a useful guide to rates customarily charged in this type of case. Also, when the defendant has hired expensive, out of town counsel, the plaintiffs seem justified in saying that the nature of the case required the skills of out of town specialists."); *Microstrategy*, 172 F. Supp. 2d at 788 & n.33 (finding rates charged by plaintiff's counsel in securities class action were warranted in part because they were "not inconsistent with the rates charged by lawyers in large, prominent, and, as here, expert law firms that typically represent defendants in securities class actions.").

[13]     While the listed fees were agreed to by the parties, defense counsel in these actions undoubtedly sought to protect their client's interests by agreeing to the lowest reasonable fee they determined a court could award in the event the fee issue was litigated. *See Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 15609, at *48 (N.D. Cal. Feb. 5, 2013) (noting that party agreeing to pay attorneys' fees as part of settlement has one "ultimate objective - paying as little as possible. . ."); *Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603

| Case | Supplemental Disclosures | Attorney's Fees |
|---|---|---|
| *Kim v. BATS Global Markets, Inc.*, 2:16-cv-02817, Stipulated Order Dismissing Action (D. Kan. Jan 13, 2017) | Financial projections and additional information concerning financial advisor's analyses | $350,000 (Enright Dec. Ex. 2) |
| *David Guerra v. Linear Technology Corp.*, 4:16-cv-05514, Stipulated Order Dismissing Action (N.D. Cal. Oct. 24, 2016) | Financial projections | $195,000 (Enright Dec. Ex. 3) |
| *Robert Berg v. Akorn, Inc.*, 1:17-cv-05016, Stipulation and Order Closing Case for All Purposes (N.D. Ill Sept 15, 2017) | Financial projections and additional information regarding the background of the merger | $322,500 (Enright Dec. Ex. 4) |
| *Garcia v. Kate Spade & Co*, No. 17cv4177, Letter (S.D.N.Y. Aug. 28, 2017) | Financial projections and additional information regarding the background of the merger | $320,000 (Enright Dec. Ex. 5) |

In fact, this Court recently recognized the importance of an informed stockholder merger vote and approved a settlement based on disclosures related to the pending merger involving Colony North Star, Inc. *See Carter v. Colony Capital, Inc.*, No. 1:16-cv-03282, Order and Final J. (D. Md. Nov. 28, 2017) (awarding attorney's fees and expenses in the amount of $321,721.55) (Enright Dec. Ex. 6); *Boothe v. Northstar Realty Finance Corp.*, 1:16-cv-03742, Order and Final J. (D. Md. Nov. 28, 2017) (awarding attorney's fees and expenses in the amount of $328,315.81) (Enright Dec. Ex. 7); *Kessler v. Northstar Asset Management Group, Inc.*, No. 1:16-cv-03745,

---

(DMC), 2005 U.S. Dist. LEXIS 26246, at *17-18 (D.N.J. Oct. 27, 2005) (awarding $9.2 million fee in non-pecuniary corporate governance based settlement, and giving weight to fact that defendant agreed to pay the fee "based on its perceived value of the settlement, that the fee negotiations were based upon a knowledgeable analysis of the appropriate fee for the benefits achieved, and that the end result reflects the parties' experience as to what is appropriate and fair.").

Order and Final J. (D. Md. Nov. 28, 2017) (awarding attorney's fees and expenses in the amount of $337,159.14) (Enright Dec. Ex. 8).

Plaintiff's Counsel has attempted to negotiate a reasonable fee with Defendants' counsel here, but Defendants' counsel has refused to engage in such discussions. Plaintiff therefore respectfully requests that the Court award his counsel the full Fee and Expense Award, which is eminently reasonable in light of the significantly higher fees courts across the country have awarded in similar actions.

### 3. The Results Obtained, the Skill Requisite to Perform the Legal Service Properly, the Novelty and Difficulty of the Question Presented by the Case, the Preclusion of Other Employment, and Time Limitations Imposed by the Circumstances

Plaintiff's Counsel pursued this action on an entirely contingent basis, and caused Defendants to disclose material information they previously withheld from stockholders, including financial projections and meaningful information concerning the Financial Advisors' analyses, which numerous courts have recognized are important for stockholders to properly assess the financial fairness of a merger.  *Supra* § IV.A.1.  The result obtained was precisely the result Congress intended when enacting Section 14(a) – "prevent[ing] management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." *Borak*, 377 U.S. at 431; *see also Wal-Mart Stores*, 54 F.3d at 71-72 ("[T]he promotion of corporate suffrage regarding a significant policy issue confers a substantial benefit regardless of the percentage of votes cast for or against the proposal at issue.").

With respect to the skill requisite to perform the legal service properly and the difficulty of the question presented, Plaintiff's Counsel was required to thoroughly and expeditiously review voluminous proxy statements to assess whether Defendants failed to disclose material information. Plaintiff's Counsel demonstrated skill in performing the required legal services, and thoroughly

and properly analyzing complex proxy statements and valuation analyses is time-consuming and often difficult, even for those experienced in doing so. "[B]ecause of the complexity and societal importance of shareholder and derivative litigation, the most able counsel should be obtained.  The attorney's fees awarded should reflect this goal." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 866 (E.D. Mo. 2005).

Additionally, Plaintiff's Counsel are members of a small law firm, and acceptance of this action necessarily precluded them from devoting resources to other cases.  *See Denton v. Pennymac Loan Servs., LLC*, No. 4:16cv32, 2017 U.S. Dist. LEXIS 74037, at *24 (E.D. Va. May 12, 2017) (accounting for fact that counsel "is a small law firm and thus representing a client on a contingent fee or fee-shifting basis necessarily involved loss of other opportunities.").  Further, Plaintiff's Counsel was required to expeditiously review the relevant SEC filings in light of the fact they needed to ensure that the Supplemental Disclosures were made before the Stockholder Vote on the Merger. Courts have recognized that counsel should not receive a lesser fee for resolving a case quickly because in many instances, such as this litigation, "it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002).

### 4.      The Experience, Reputation and Ability of the Attorneys

The experience, ability and reputation of Plaintiff's Counsel also supports the Fee and Expense Award.  The attorneys at Monteverde & Associates PC have extensive experience in prosecuting stockholder class actions, and the firm's attorneys have obtained significant therapeutic benefits and monetary recoveries for stockholders as sole or co-lead counsel in numerous complex class actions across the country. *See* Monteverde & Associates Firm Resume, Enright Dec. Ex 9.   Similarly, Plaintiff's local counsel, Levi & Korsinsky LLP ("Levi &

Korsinsky"), is a highly accomplished national law firm that routinely handles complex matters. Levi & Korsinsky attorneys possess extensive experience litigating complex securities and merger-related class actions on behalf of stockholders, and have achieved significant victories on behalf of their clients in courts across the country. *See* Levi & Korsinsky Firm Resume, Enright Dec. Ex 10. The experience, reputation and ability of Plaintiff's Counsel support awarding the Fee and Expense Award in full.

> ### 5.    A Reasonable Multiplier is Appropriate Because Plaintiff's Counsel Undertook Representation on a Contingent Basis

Plaintiff's Counsel respectfully submit that, consistent with the *Johnson* factors, a reasonable multiplier of 3.84 is also appropriate in this case. "After a court determines the lodestar amount, it may increase or decrease that amount by applying a lodestar multiplier. The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Schering-Plough/Merck Proposed Merger*, 2010 U.S. Dist. LEXIS 29121, at *55.

The Court should give considerable weight to the fact that Plaintiff's Counsel undertook representation on a contingency basis.[14] As the Fourth Circuit long ago recognized:

> The contingency of compensation . . . is highly relevant in the appraisal of the reasonableness of any fee claim. The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain.

---

[14]    Factor 10, the undesirability of the action, is relevant only to the extent that the contingency element of this putative class action represents excessive risk for many firms. Additionally, factor 11, the nature and length of the professional relationship with the client, should not be considered, as the litigation centered on a merger that was first announced on October 23, 2017.

*McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967).  The significance of this factor has been

reaffirmed on numerous occasions. Indeed, in *In re Abrams & Abrams*, the Fourth Circuit

emphasized the importance of this factor – which allows access to the courts to those not otherwise

able to pursue claims, and transfers significant risk onto plaintiff's counsel.  As the Fourth Circuit

explained in holding that a district court failed to properly factor the contingent nature of the fee

into its analysis:

> [C]ontingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . . [I]t may be necessary to provide a greater return than an hourly fee offers to induce lawyers to take on representation for which they might never be paid . . . . In other words, plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever.

605 F.3d at 245-46.

Other courts have similarly emphasized the significance of the risks assumed by plaintiff's

counsel in contingency cases, including those cases where a resolution is achieved early in the

litigation:

> Here the district court erred in basing its denial of a risk multiplier on the fact that the parties settled at a relatively early stage in the litigation.  The point at which plaintiffs settle with defendants (or win a judgment against defendants) is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them . . . . when attorneys' receipt of payment is contingent on the success of the litigation, reasonable compensation may demand more than the hourly rate multiplied by the hours worked, for that is exactly what the attorneys would have earned from clients who agreed to pay for services regardless of success. Thus, to account for the contingent nature of the compensation, a court should assess the riskiness of litigation.

*Skelton*, 860 F.2d at 257-58; *see also In re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d at 788

("[T]o reward lead counsel for the favorable result achieved for the class and to provide an

incentive for competent lawyers to pursue such actions in the future on an essentially contingent basis, the ultimate award must be substantially greater than the lodestar figure."); *In re Schering-Plough/Merck Merger*, 2010 U.S. Dist. LEXIS 29121 at *55-58 (applying multiplier of 2.18 in disclosure-only settlement and noting that a multiplier of 3 may be awarded even in "a simple case where no risks pertaining to liability or collection were pertinent," and that "the application of a multiplier of 2.18 is not uncommon where the lodestar method is applied.")[15].

In this case, the Court should give considerable weight to the fact that Plaintiff's Counsel undertook representation on a contingency fee basis on behalf of a relatively small stockholder who would have been unable to pay for experienced counsel to protect his corporate suffrage rights and investigate the fairness of the Merger. Plaintiff's Counsel risked receiving nothing for their work had they been unable to procure the material Supplemental Disclosures.

## IV. PLAINTIFF'S COUNSEL ARE ALSO ENTITLED TO AN AWARD OF FEES AND EXPENSES UNDER DELAWARE LAW

BroadSoft is incorporated in Delaware, and it is well-settled under Delaware law that an award of attorneys' fees and expenses is appropriate when counsel's litigation efforts achieve beneficial supplemental disclosures that enable stockholders to better assess the fairness of a merger. "When a plaintiff pursues a cause of action relating to the internal affairs of a Delaware corporation and generates benefits for the corporation or its stockholders, Delaware law calls for

---

[15]    *See also Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 470 (S.D. W. Va. 2010) (noting that "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee" and collecting cases in the Fourth Circuit with lodestar multipliers in this range); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 467 (D. Md. 2014) (same); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) (same); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) ("In shareholder litigation, courts typically apply a multiplier of 3 to 5 to compensate counsel for the risk of contingent representation."); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.") (collecting cases).

an award of attorneys' fees and expenses…" *In re Del Monte Foods Co. S'holders Litig.*, No. 6027-VCL, 2011 Del. Ch. LEXIS 94, at *26, *35-36 (Del. Ch. June 27, 2011)[16] (finding disclosures related to the projections banker derived and other valuation inputs warranted fee award of $350,000 to $500,000).   Under Delaware law, "[a]wards for supplemental disclosures about banker analyses and relationships cluster around $400,000 to $500,000." *Id.* at *33.

Such disclosures are considered a valuable benefit, because "when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Only providing some of that information is insufficient to fulfill the duty of providing a 'fair summary of the substantive work performed by the investment bankers

---

[16]     Plaintiff's claim under Section 14(a) the Exchange Act clearly "relate[s] to the internal affairs" of BroadSoft, including the content of the Proxy Defendants issued.  As the Supreme Court explained in discussing the interplay between Section 14(a) and state corporate law, Section 14(a) "was clearly an intrusion of federal law into the internal affairs of corporations." *Cort v. Ash*, 422 U.S. 66, 85 (1975); *Sullivan v. Chase Inv. Servs., Inc.*, 434 F. Supp. 171, 184 (N.D. Cal. 1977) (same).  The Court may and should exercise supplemental or ancillary jurisdiction over Plaintiff's claim for attorney's fees under Delaware law.  *See In re Outsidewall Tire Litig.*, 52 F. Supp. 3d 777, 783-84 (E.D. Va. 2014) (collecting Fourth Circuit cases holding district courts should assume ancillary jurisdiction over fee disputes that relate to the underlying dispute); *Clark v. Kick*, 79 F. Supp. 2d 747, 749-50 (S.D. Tex. 2000) ("A court has supplemental jurisdiction to hear fee disputes and lien claims between parties and their attorneys, and between groups of attorneys, without regard to the jurisdiction basis of the original action, so long as the fee dispute relates to the original action…All the Circuit Courts of Appeal which have considered this question appear to agree on this point."); *Kalyawongsa v. Moffett*, 105 F.3d 283, 287-288 (6th Cir. 1997) ("Lawyers are officers of the court. Their fees are part of the overall costs of the underlying litigation. Resolution of related fee disputes is often required to provide a full and fair resolution of the litigation. Unlike a state court judge hearing a separate contract action, a federal judge who has presided over a case is already familiar with the relevant facts and legal issues. Considerations of judicial economy are at stake. Thus, we hold that although attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action."); *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir. 1988) (affirming district court's exercise of ancillary jurisdiction over motion for fees related to work performed in connection with attempting to enjoin tender offer).

upon whose advice the recommendations of the[] board as to how to vote . . . rely.'" *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d at 203-04.  Indeed, stockholders seek to "closely examine[] the underlying analyses performed by the investment bankers when determining whether a transaction price is fair or a board reasonably relied on the banker's advice." *In re Pure Res. S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002).

Timely, meaningful disclosures such as the Supplemental Disclosures at issue here can provide greater benefit to a class than money damages:

> Indeed, the timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process. Considering all the circumstances presented, I have no difficulty concluding that the disclosures made here constitute adequate consideration for the settlement of the claims asserted and adequately supported the fee requested.

*In re Talley Indus., Shareholders Litig.*, No. 15961, 1998 Del. Ch. LEXIS 53, at *46 (Del. Ch. Apr. 9, 1998).

In assessing fee awards for such disclosures, Delaware courts consider: (i) the amount of time and effort applied to the case by counsel for the plaintiffs; (ii) the relative complexities of the litigation; (iii) the standing and ability of petitioning counsel; (iv) the contingent nature of the litigation; (v) the stage at which the litigation ended; (vi) whether the plaintiff can rightly receive all the credit for the benefit conferred or only a portion thereof; and (vii) the size of the benefit conferred.  *In re Del Monte Foods Co. S'holders Litig.*, 2011 Del. Ch. LEXIS 94 at *26-*27.  In assessing the most important factor, the benefit conferred, Delaware courts apply a rubric based upon the significance of the newly disclosed information, with courts "often award[ing] fees of approximately $400,000 to $500,000 for one or two meaningful disclosures…" and slightly lesser

24

fees for helpful disclosures.  *Id.* at *27, *36 (finding fee of $350,000 to $400,000 warranted for disclosures related to banker's valuation inputs); *see also In re Plains Res., Inc. S'holders Litig.*, No. 071-N, 2005 Del. Ch. LEXIS 12, at *23 (Del. Ch. Feb. 4, 2005) ("The court awards fees for supplemental disclosures by juxtaposing the case before it with cases in which attorneys have achieved approximately the same benefits.").

Further, in the mootness context, "a fee can be awarded if the disclosure provides some benefit to stockholders, whether or not material to the vote.  In other words, a helpful disclosure may support a fee award in this context."  *In re Xoom Corp. Stockholder Litig.*, No. 11263-VCG, 2016 Del. Ch. LEXIS 117, at *10 (Del. Ch. Aug. 4, 2016); *see also In re Plains Res., Inc. S'holders Litig.*, 2005 Del. Ch. LEXIS 12 at *23 ("Oftentimes, the court uses a quantum meruit approach to determine the awards for therapeutic benefits, and discounts the fees accordingly if the benefits are meager or the disclosures are only marginally material."); *In re Golden State Bancorp Inc. S'holders Litig.*, No. 16175, 2000 Del. Ch. LEXIS 8, at *8 (Del. Ch. Jan. 7, 2000) (awarding fee of $500,000 and holding "it is enough that a reasonable Golden State stockholder might have considered the additional financials… of some interest in deciding how to vote.").

## A.     The Supplemental Disclosures Benefitted the Class

As discussed above in significant detail, as a result of this litigation and the efforts of Plaintiff's Counsel, Plaintiff secured the disclosure and dissemination of beneficial Supplemental Disclosures that enabled BroadSoft stockholders to properly asses the Financial Advisors' valuation analyses and the fairness of the Merger Consideration they were asked to accept. Delaware courts have awarded fees in excess of those requested by Plaintiff's Counsel here for similar types of beneficial disclosures.  *See In re Del Monte Foods Co. S'holders Litig.*, 2011 Del. Ch. LEXIS 94 at *26-*27.

In short, the Fee and Expense Award requested by Plaintiff's Counsel is fair, reasonable, and plainly within the ambit of past fee and expense awards for similar disclosures. Furthermore, absent the filing of Plaintiff's meritorious complaint and the corresponding efforts of Counsel, the public stockholders of BroadSoft would not have received the benefit of these material Supplemental Disclosures. Plaintiff's Counsel should be compensated in accordance with past precedent for their efforts.

**B.      The Amount of Time and Effort Expended by Counsel**

The Fee and Expense Award is also consistent with – and reasonable in comparison to – the amount of time and effort expended by Plaintiff's Counsel on this case.

While the hourly rate represented by a fee and expense award is a secondary consideration in a fee and expense determination under Delaware law, Delaware courts often look to the rate as part of a so-called "backstop" check. *In re Abercrombie & Fitch Co. S'holders Derivative Litig. v. Jeffries*, 886 A.2d 1271, 1273 (Del. 2005) (noting the "use of hours invested per the lodestar method" as an acceptable "'backstop check,' or as a means to evaluate the propriety of the amount of the award against the [amount] asked for by plaintiffs."); *Franklin Balance Sheet Inv. Fund v. Crowley*, No. 888-VCP, 2007 Del. Ch. LEXIS 133, at *46 (Del. Ch. Aug. 30, 2007) ("As a 'backstop check,' this Court also considers whether a contemplated fee award translates into an exorbitant hourly rate. The award this Court is making does represent a high hourly rate of $ 4,023, that amply rewards Plaintiffs' counsel for undertaking this litigation on a fully contingent basis."); *In re AXA Fin., Inc. S'holders Litig.*, No. 18268, 2002 Del. Ch. LEXIS 57, at *26 (Del. Ch. May 16, 2002) ("[T]he hourly rate represented by a fee award is a secondary consideration, the first issue being the size of the benefit created."). In this case, the "backstop" check reveals the requested Fee and Expense Award to be both reasonable and appropriate – especially in light of

Plaintiff's Counsel's efficient prosecution of this case and their aggregate lodestar amount.

Here, Plaintiff's Counsel's lodestar incurred while creating a benefit for BroadSoft stockholders is $64,927.50 plus $400 in expenses, for a total of $65,327.50.  The fee and expense award requested in this case is approximately 3.84 times this total and, without expenses, represents an average hourly rate of approximately $2,185.00 for all time incurred in the prosecution and successful resolution of this Action.  *See* Enright Dec. Ex. 11.  These metrics are comparable to or less than those awarded in other similar cases and are thus reasonable.  *See, e.g., In re AXA Fin., Inc. S'holders Litig.*, 2002 Del. Ch. LEXIS 57 at *26 (noting that implied hourly rate of more than $2,630, "while high, is not out of line with those in other cases in which plaintiffs' counsel have achieved a significant benefit to the class with only modest litigation efforts."); *Dias v. Purches*, No. 7199-VCG, 2012 Del. Ch. LEXIS 227, at *34-35 (Del. Ch. Oct. 1, 2012)  (finding one good disclosure warranted fee award of $400,000, but reducing award to $266,667 because the higher amount would have resulted in an effective hourly rate of more than $42,000 an hour).

### C.       The Remaining Factors Support the Requested Fee and Expense Award

As set forth above, the relative complexities of the litigation, the contingent nature of the litigation, and the standing and ability of counsel also further support the Fee and Expense Award and reveal it to be reasonable.

Where, as here, counsel's compensation is contingent on a recovery, a premium over counsel's normal hourly rate is appropriate.  *See In re Plains Res.*, 2005 Del. Ch. LEXIS 12 at *22 ("[P]laintiffs' counsel were all retained on a contingent fee basis, and stood to gain nothing unless the litigation was successful. It is consistent with the public policy of Delaware to reward this risk-taking in the interests of shareholders."); *Dias*, 2012 Del. Ch. LEXIS 227 at *17-18, 34-35 (awarding fee for one beneficial supplemental disclosure significantly above lodestar where

counsel took on case on a contingent basis); *In re Golden State Bancorp Inc. S'holders Litig.*, 2000 Del. Ch. LEXIS 8 at *13-15 ("[W]hen this Court determines fee awards in a therapeutic benefit case, it uses a *quantum meruit* analysis. Under such an analysis, the Court adds a premium to the plaintiffs' attorneys typical noncontingency fee in proportion to the benefit the plaintiffs' attorneys achieved for their clients…A risk premium accounts for the contingent nature of the case and the intense effort required over a short time period by skilled lawyers, even though that effort produced a modest benefit.").

## V.        CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant an award of attorney's fees and expenses to Plaintiff's Counsel in the aggregate amount of $250,000.

Dated: February 5, 2018                              Respectfully submitted,

                                                                     **LEVI & KORSINSKY LLP**

                                                                     By: */s/ Donald J. Enright*
                                                                            Donald J. Enright (Bar No. 13551)
                                                                            1101 30th Street, N.W., Suite 115
**OF COUNSEL**                                            Washington, DC 20007
                                                                            T: (202) 524-4290
**MONTEVERDE & ASSOCIATES PC**          F: (202) 333-2121
Juan E. Monteverde                                        Email: denright@zlk.com
The Empire State Building
350 Fifth Avenue, Suite 4405                         *Attorneys for Plaintiff*
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email:jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT on February 5, 2018, I authorized the electronic filing of the foregoing document with the Clerk of the Court via the CM/ECF system.  The CM/ECF system will provide service via a Notice of Electronic Filing to the parties registered in this case.  Also on February 5, 2018, the foregoing document was served on Defendants via electronic mail to their counsel:

Koji Fukumura
Peter Adams
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
kfukumura@cooley.com
padams@cooley.com

I declare under penalty of perjury under the laws of the United States and the State of Maryland that the foregoing is true and correct.

Executed this 5th day of February, 2018.

By: */s/ Donald J. Enright*_____